UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CASEY HAYES PERRY,

        Plaintiff,                          Case No. 1:11-cv-1103

v.                                            Honorable Gordon J. Quist

MARK KELLEY and DANIEL SPITTERS,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff will pay the initial partial filing fee when funds become available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims, in part, and allow the remainder of his claims to proceed.

Also before the Court are various motions by Plaintiff and Defendant Spitters. Plaintiff requests appointment of counsel (docket #8), and leave to amend the complaint (docket #12). Defendant Spitters requests an order requiring Plaintiff to provide missing pages from the complaint (docket #15). For the reasons stated herein, Plaintiff's request for appointment of counsel

will be denied, but his request for leave to amend the complaint will be granted. In addition, Defendant's request for an order requiring Plaintiff to provide missing pages from the original complaint will be denied.

**Procedural History**

Plaintiff filed his original complaint in October 2011. He also filed a request for leave to amend his complaint. The Court granted his request in December 2011, giving him 28 days to file the amended complaint. In January 2012, Plaintiff filed a document titled "MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT" (docket #12). Though it is titled a motion, it appears to be Plaintiff's proposed amended complaint, because it is written in the form of a complaint. Thus, the Court will "grant" Plaintiff's motion and deem that "motion" to be Plaintiff's amended complaint. The amended complaint serves as the basis for the Court's review in this Opinion.

**Factual Allegations**

Plaintiff Casey Hayes Perry presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw Correctional Facility, though the events giving rise to his complaint occurred while he was housed at the Muskegon Correctional Facility (MCF) and the Earnest C. Brooks Correctional Facility (LRF). Plaintiff sues two MDOC employees: Mark Kelley, a registered nurse formerly employed at MCF, and Daniel Spitters, a physician assistant (PA) at LRF.

On January 26, 2009, while Plaintiff was incarcerated at MCF, Plaintiff had an appointment with a PA to be examined for the purpose of renewing a bottom-bunk detail. He contends that he was issued a bottom-bunk detail prior to transfer to MCF because he is diabetic and he often feels dizzy after taking insulin. At the appointment, he met with Defendant Mark Kelley. Kelley told Plaintiff that he was a PA, though Kelley's identification tag read "Mark Kelley, RN."

Kelley denied Plaintiff's request to renew the bottom-bunk detail, stating that he did not have authority to renew it. No other member of the health care staff examined Plaintiff that day.

After his appointment, Plaintiff submitted a health care request form to see a doctor regarding a bottom-bunk detail. In response to his request, he was notified by health care staff that he had been seen by a PA on January 26, and he did not meet the criteria for a bottom-bunk detail. On February 19, Plaintiff filed a grievance claiming that he had not been seen by a PA, and that Kelley committed fraud by claiming to be one. He never received a response to the grievance.

On February 20, Defendant Kelley supervised Plaintiff's insulin injection in the health care unit. Later that day, Kelley prepared a misconduct report alleging that Plaintiff had committed assault and battery against him. According to Kelley, when Plaintiff gave Kelley his insulin syringe, the needle was "bent up," outside the protective cap, and the needle stuck in Kelley's thumb. (Am. Compl., docket #12, Page ID#75.) Kelley contended that Plaintiff intentionally bent the needle to injure him. As a result of the misconduct report, Plaintiff was placed in segregation pending a misconduct hearing. The cell in which he was placed lacked a toilet, sink, and fresh drinking water. Plaintiff remained in the cell for a total of seven days. Plaintiff was found guilty of the assault-and-battery charge after the misconduct hearing, and his punishment was seven days in punitive segregation and thirty days of loss of privileges. Plaintiff appealed the misconduct conviction to state court, which vacated the hearing decision and remanded the matter for another hearing. At the second hearing, other prisoners testified that they did not see Plaintiff lunge or jab at Kelley with the needle. Plaintiff was found not guilty of the misconduct.

In December 2010, Plaintiff discovered several false statements in his medical records allegedly entered by Defendant PA Spitters. Spitters reports that he met with Plaintiff on January 26, 2009 and discussed the bottom-bunk detail; Plaintiff claims that he never met with Spitters. Spitters also reports that Plaintiff is a smoker; Plaintiff claims that he does not smoke and

is, in fact, allergic to cigarette smoke. Plaintiff alleges that Spitters made the foregoing statements as part of a conspiracy with Kelley to cover up Kelley's illegal act of falsely representing himself to be a PA. According to Plaintiff, Spitters's false statements have prevented Plaintiff from receiving proper care.

Plaintiff claims that Defendants' conduct violated prison policies, state law, and Plaintiff's constitutional rights. As relief, Plaintiff seeks damages, a declaratory judgment, and an injunction. He also seeks to have criminal charges brought against Defendant Kelley. (Am. Compl. 11, docket #12, Page ID#83.)

## Discussion

### I.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment

Construing the complaint liberally, as the Court must, Plaintiff contends that his Eighth Amendment rights were violated when: (1) he was denied a bottom-bunk detail; (2) he was placed in punitive segregation, in a cell lacking access to water, a toilet, or clean drinking water; and (3) Spitters entered false information in his medical file. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is generally concerned with "deprivations of essential food, medical care, or sanitation" or "other

conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). In other words, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions-of-confinement claims).

1. Bottom-bunk detail

Plaintiff contends that he was not able to obtain a bottom-bunk detail as an accommodation for his dizziness. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental

effect of the delay in medical treatment." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

It is not at all clear from Plaintiff's allegations whether either of the Defendants was responsible for Plaintiff's inability to obtain a bottom-bunk detail. Plaintiff's allegations against Kelley focus largely on Kelley's allegedly false claim to being a PA. There is no clear connection between Kelley's misrepresentations and Plaintiff's inability to obtain a bottom-bunk detail, however. The MDOC's written policies in effect at the time gave both RNs and PAs the authority to evaluate prisoners for special medical accommodations, including bottom-bunk details.[1] Construing Plaintiff's complaint liberally, however, the Court reads it to assert that Defendant Kelley denied Plaintiff's request or effectively prevented Plaintiff from obtaining the detail. So construed, the Court will allow Plaintiff's Eighth Amendment claim to proceed against Defendant Kelley. It is not clear that Plaintiff will ultimately be able to show that he was suffering from a sufficiently serious medical need, or that Kelley was aware of and deliberately indifferent to this need, but Plaintiff arguably states enough facts to survive dismissal at the screening stage.

---

[1] Under MDOC Policy Directive 04.06.160 (June 30, 2008), a "qualified health professional" is responsible for identifying options available to prisoners with special medical needs, and entering the recommended options in a "Medical Detail" or "Special Accommodation Notice." *Id.* ¶ E. The term "qualified health professional" expressly includes registered nurses. *Id.* ¶ A. In addition, when medical details and special accommodation notices expire, they may be reissued after a "*qualified health professional* examines the prisoner and determines that the prisoner's special medical need still exists." *Id.* ¶ F (emphasis added).

Similarly, Plaintiff's allegations against PA Spitters focus on allegedly false remarks in Plaintiff's medical records, namely, that he saw Plaintiff on January 26, 2009 regarding the bottom-bunk detail. When Plaintiff requested a bottom-bunk detail from health care staff shortly after that date, he was told that he had already been examined by a PA and he did not qualify for one. Construing Plaintiff's complaint liberally, the Court reads it to assert that Spitters denied Plaintiff's request for a bottom-bunk detail, or that his report effectively prevented Plaintiff from obtaining one. So construed, the Court will allow Plaintiff's Eighth Amendment claim against Spitters to proceed.

### 2. Punitive segregation

To the extent Plaintiff asserts that his Eighth Amendment rights were violated because he was confined in punitive segregation, he does not state a claim. Punitive segregation is not cruel and unusual punishment; rather, it is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347; *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999).

### 3. Cell conditions

To the extent Plaintiff asserts that the particular conditions of his confinement, i.e. the lack of a toilet, sink, and drinking water in his cell for a period seven days, violated his rights under the Eighth Amendment, he does not state a claim against Defendants. There is no allegation that Defendants were even aware of Plaintiff's conditions of confinement, much less responsible for them; thus, they could not have been deliberately indifferent to them. Moreover, as members of the prison's health care staff, it is unlikely that they were responsible for the conditions of Plaintiff's custody, or had any authority to change the aforementioned conditions in his cell.

4.     <u>Medical records</u> (Plaintiff is a smoker)

Plaintiff also fails to state an Eighth Amendment claim based on Defendant Spitters's false report that Plaintiff is a smoker.  Plaintiff contends that he is allergic to cigarette smoke, but he fails to identify any harm, or risk thereof, stemming from the false information in his medical records.  There is no indication that Plaintiff was at all affected by the information, much less that he was subjected to a serious risk to his health or safety.  Plaintiff does not allege, for instance, that the information caused him to be mistreated by prison staff or involuntarily exposed to cigarette smoke.  Indeed, Plaintiff is not at risk of such exposure because the MDOC has generally banned smoking in its prison facilities.  *See* MDOC Policy Directive 01.03.140 (effective Mar. 14, 2011).  Thus, in the absence of a significant risk of harm to Plaintiff's health or safety stemming from the false information, he cannot satisfy the objective component of an Eighth Amendment claim.

For the foregoing reasons, therefore, the Court will dismiss Plaintiff's Eighth Amendment claims with respect to Plaintiff's placement in punitive segregation, his conditions in segregation, and the false information in his medical records regarding smoking; however, the Court will allow Plaintiff to proceed with an Eighth Amendment claim that Defendants prevented Plaintiff from obtaining a bottom-bunk detail.

**B.     First Amendment (retaliation)**

Plaintiff asserts that Defendant Kelley accused him of assault and battery in retaliation for a grievance that Plaintiff had filed against Kelley a day earlier.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  The Court concludes that Plaintiff's retaliation claim against Kelley is sufficient to survive dismissal at this stage.

**C.     Fourteenth Amendment (Due Process)**

Plaintiff claims that he was denied due process in connection with his grievances and his misconduct hearing.  In all cases where a person stands to be deprived of his life, liberty or

property, he is entitled to due process of law under the Fourteenth Amendment. Plaintiff does not state a due-process claim against Defendants Kelley or Spitters, however, because there is no indication that they were in any way involved in the grievance process or conducting the misconduct hearing. Even if Kelley's accusations triggered the misconduct proceedings, those accusations did not deprive Plaintiff of due process at the subsequent misconduct hearing. Because there is no indication that Kelley or Spitters deprived Plaintiff of due process, he fails to state a due-process claim against them.

II. Pending motions

A. Plaintiff's motion to appoint counsel

Plaintiff has requested a court-appointed attorney (docket #8). Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur- Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel will therefore be denied.

B. Motion for order to provide missing pages

Defendant Spitters has filed a motion requesting Plaintiff to provide missing pages from the complaint. It appears that Plaintiff attempted to serve a copy of his original complaint on

Spitters at LRF. Because the Court now accepts Plaintiff's recently filed "motion" as the amended complaint, the Court will deny Defendant's motion and require Plaintiff to serve a copy of the amended complaint on both Defendants.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed, in part, for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claims related to his confinement in punitive segregation, his cell conditions, and the false information in his medical file that Plaintiff is a smoker, as well as his Fourteenth Amendment due-process claim, are dismissed for failure to state a claim. The remainder of Plaintiff's claims, including his First Amendment retaliation claim and his Eighth Amendment claim related his inability to obtain a bottom-bunk detail, are allowed to proceed, together with any state-law claims.

Finally, Plaintiff's motion for appointment of counsel and Defendant's motion for Plaintiff to provide missing pages will be denied, but Plaintiff's motion to amend the complaint will be granted.

An Order consistent with this Opinion will be entered.


Dated: March 16, 2012 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE