UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CASEY HAYES PERRY,

        Plaintiff,

Case No. 1:11-cv-1103

Hon. Gordon J. Quist

v.

MARK KELLEY, *et al.*,

        Defendants.

                      /

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant Daniel Spitters "Motion to dismiss pursuant to 42 U.S.C. § 1997e(a) and Fed. R. Civ. P. 12(b)(6)" (docket no. 34) and defendant Kelley's motion for summary judgment (docket no. 50).

    **I.**    **Plaintiff's claims**

Plaintiff filed a *pro se* action against defendants Physician Assistant (PA) Daniel Spitters and RN Mark Kelley. The Court previously summarized plaintiff's claims alleged in his amended complaint as follows:

> Plaintiff Casey Hayes Perry presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw Correctional Facility, though the events giving rise to his complaint occurred while he was housed at the Muskegon Correctional Facility (MCF) and the Earnest C. Brooks Correctional Facility (LRF). Plaintiff sues two MDOC employees: Mark Kelley, a registered nurse formerly employed at MCF, and Daniel Spitters, a physician assistant (PA) at LRF.
>
> On January 26, 2009, while Plaintiff was incarcerated at MCF, Plaintiff had an appointment with a PA to be examined for the purpose of renewing a bottom-bunk detail. He contends that he was issued a bottom-bunk detail prior to transfer to MCF because he is diabetic and he often feels dizzy after taking insulin. At the appointment, he met with Defendant Mark Kelley. Kelley told Plaintiff that he was

> a PA, though Kelley's identification tag read "Mark Kelley, RN." Kelley denied Plaintiff's request to renew the bottom-bunk detail, stating that he did not have authority to renew it. No other member of the health care staff examined Plaintiff that day.
>
> After his appointment, Plaintiff submitted a health care request form to see a doctor regarding a bottom-bunk detail. In response to his request, he was notified by health care staff that he had been seen by a PA on January 26, and he did not meet the criteria for a bottom-bunk detail. On February 19, Plaintiff filed a grievance claiming that he had not been seen by a PA, and that Kelley committed fraud by claiming to be one. He never received a response to the grievance.
>
> On February 20, Defendant Kelley supervised Plaintiff's insulin injection in the health care unit. Later that day, Kelley prepared a misconduct report alleging that Plaintiff had committed assault and battery against him. According to Kelley, when Plaintiff gave Kelley his insulin syringe, the needle was "bent up," outside the protective cap, and the needle stuck in Kelley's thumb. (Am. Compl., docket #12, Page ID#75.) Kelley contended that Plaintiff intentionally bent the needle to injure him. As a result of the misconduct report, Plaintiff was placed in segregation pending a misconduct hearing. The cell in which he was placed lacked a toilet, sink, and fresh drinking water. Plaintiff remained in the cell for a total of seven days. Plaintiff was found guilty of the assault-and-battery charge after the misconduct hearing, and his punishment was seven days in punitive segregation and thirty days of loss of privileges. Plaintiff appealed the misconduct conviction to state court, which vacated the hearing decision and remanded the matter for another hearing. At the second hearing, other prisoners testified that they did not see Plaintiff lunge or jab at Kelley with the needle. Plaintiff was found not guilty of the misconduct.
>
> In December 2010, Plaintiff discovered several false statements in his medical records allegedly entered by Defendant PA Spitters. Spitters reports that he met with Plaintiff on January 26, 2009 and discussed the bottom-bunk detail; Plaintiff claims that he never met with Spitters. Spitters also reports that Plaintiff is a smoker; Plaintiff claims that he does not smoke and is, in fact, allergic to cigarette smoke. Plaintiff alleges that Spitters made the foregoing statements as part of a conspiracy with Kelley to cover up Kelley's illegal act of falsely representing himself to be a PA. According to Plaintiff, Spitters's false statements have prevented Plaintiff from receiving proper care.
>
> Plaintiff claims that Defendants' conduct violated prison policies, state law, and Plaintiff's constitutional rights. As relief, Plaintiff seeks damages, a declaratory judgment, and an injunction. He also seeks to have criminal charges brought against Defendant Kelley. (Am. Compl. 11, docket #12, Page ID#83.)

Opinion at pp. 2-4 (March 16, 2012) (docket no. 25).

The court dismissed all of plaintiff's Eighth Amendment claims except his claim that defendants prevented him from obtaining a bottom-bunk detail. *Id.* at p. 9. The court also allowed plaintiff's First Amendment retaliation claim, i.e., that RN Kelley accused him of assault and battery in retaliation for a grievance that plaintiff filed against Kelley the previous day. *Id.* Finally, the court dismissed plaintiff's Fourteenth Amendment Due Process claim. *Id.* at pp. 9-10.

## II. PA Spitters' motion to dismiss (docket no. 34)

### A. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

PA Spitters seeks to dismiss plaintiff's action pursuant to Fed. R. Civ. P. 12(b)(6) for lack of exhaustion and failure to state a claim. This motion is unopposed.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its

3

well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

### B. Exhaustion

#### 1. Exhaustion requirement

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the giveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not

4

receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

It is appropriate for defendants in a prisoner civil rights action to raise the affirmative defense of failure to exhaust administrative remedies in a motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir.), cert. denied 129 S. Ct. 733 (2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense [under the PLRA] . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Id.* (internal quotation marks omitted).

The MDOC grievance procedure is an administrative review regulated by the agency's Policy Directives. This court may take judicial notice of plaintiff's grievance filings in this state agency proceeding for purposes of deciding a motion to dismiss. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion, but may only take judicial notice of facts which are not subject to reasonable dispute); *Marshek v. Eichenlaub*, No. 07-1246, 2008 WL 227333 at *1 (6th Cir. Jan. 25, 2008) (court can take judicial notice of prisoner's transfer as shown in the Bureau of Prison's Inmate locator accessed on the agency's official website); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991) ("[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"); *Walker v. Woodford*, 454 F.Supp.2d 1007, 1021-23 (S.D.Cal. 2006) (the Court may consider a limited set of documents without converting a Rule 12(b)(6) motion into a motion for

5

summary judgment, including matters that can be judicially noticed; documents pertaining to the prisoner's exhaustion efforts "are part of a state administrative proceeding and may be judicially noticed, not for the truth of their contents but for the fact that the grievance proceeding occurred"); *Eggerson v. United States*, 1: 05-cv-594, 2006 WL 1720252 at *3 (W.D.Mich. June 22, 2006) ("In ruling on a motion under Rule 12(b)(6), the court may supplement the facts alleged in the pleadings by considering facts susceptible to judicial notice under Fed.R.Evid. 201"); *Walker v. Abdellatif*, No. 1:07-cv-1267, 2009 WL 579394 (W.D. Mich. March 5, 2009) (taking judicial notice of MDOC prisoner grievance proceedings in deciding motion to dismiss for lack of exhaustion); *White v. Correctional Medical Services, Inc.*, No. 1:08-cv-277, 2009 WL 596473 (W. D. Mich. March 6, 2009) (same).

Taking judicial notice of a prisoner's administrative grievance proceeding is consistent with the purpose of the PLRA's "invigorated" exhaustion provision, which Congress enacted to control the "sharp rise in prisoner litigation in the federal courts." *Woodford*, 548 U.S. at 84. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones*, 549 U.S. at 204.

### 2. Plaintiff's grievances

Defendant Spitters has identified five grievances which were filed and exhausted during the relevant time frame of January 29, 2009 (the date of the alleged encounter with PA Spitters) through October 19, 2011 (the date plaintiff filed this action): MCF-09-2190-12z ("2190"); RMI-09-03-327-12h1 ("327"); MCF-09-07-00687-28a ("687"); LRF-10-12-1924-12d4 ("1924"); and MCF-09-02-0015-0123 ("15").

#### a. Grievance No. 2190

While this grievance mentions the January 26, 2009 encounter between plaintiff and health care in passing, the issue grieved is an incident which occurred on February 18, 2009 and is directed at Housing Unit Manager (HUM) Whalen's "rude, hostile and abusive behavior" towards plaintiff, including Whalen's submission of false information into plaintiff's medical records. Grievance No. 2190 (docket no. 34-3 at p. 10). This grievance did not mention PA Spitters or the alleged denial of a bunk detail.

#### b. Grievance No. 327

This grievance involves an incident date of March 6, 2009, when plaintiff learned that he would not be receiving a special accommodation for a daily snack bag. Grievance no. 327 (docket no. 34-4 at p. 6). This grievance did not mention PA Spitters or the alleged denial of a bunk detail.

#### c. Grievance No. 687

This grievance mentions January 26, 2009 as the date of the incident, but was not filed until July 12 2009. Grievance no. 687 (docket no. 34-5 at p. 5). This grievance is directed against HUM Whalen and RN Kelley for Kelley's alleged impersonation of a physician's assistant.

7

*Id.* While this grievance includes a passing reference to plaintiff's request for a bottom bunk detail (i.e., "I had a call out to see P.A. or physician for my illness of diabetes and to be reissued a Bottom Bunk medical detail"), it is directed at RN Kelley. *Id.* PA Spitters is not named in the grievance. *Id.*

### d. Grievance No. 1924

This grievance involves an incident date of December 8, 2010. Grievance no. 1924 (docket no. 35-1 at p. 4). This grievance alleged that RN Kelley was impersonating a physician's assistant and that PA Spitters entered false statements in plaintiff's medical records to cover up Kelley's illegal activities. *Id.* While the grievance mentions plaintiff's January 26, 2009 examination, it does not address the alleged failure to order a lower bunk detail. *Id.* This grievance was rejected as duplicative of Grievance no. 687 (i.e., "[y]ou have already submitted a grievance regarding a health care provider impersonating another health care provider on January 26, 2009"). *Id.*

### e. Grievance No. 15

This grievance involves an incident date of February 4, 2010. Grievance no. 15 (docket no. 35-2 at p. 5). This grievance alleged that RN Burrows refused to give him proper treatment for his diabetes. *Id.* The grievance does not name PA Spitters. *Id.*

### 3. Discussion

As an initial matter, four of the grievances (grievance nos. 2190, 327, 687 and 15) do not name PA Spitters as the person grieved as required by PD 03.02.130. Because plaintiff failed to name P.A. Spitters in these grievances, he has failed to properly exhaust these grievances against Spitters as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93;

*Sullivan v. Kasajaru*, 316 Fed. Appx. 469, 470 (6th Cir. 2009) (affirming dismissal for lack of exhaustion where prisoner failed follow requirements of Policy Directive 03.02.130, which explicitly required him to name each person against whom he grieved, citing *Jones* and *Woodford*).

As discussed, grievance no. 1924 included a reference to PA Spitters. However, this grievance was not directed at PA Spitters for failing to give plaintiff a bottom-bunk detail. As reflected in the Step I response, this grievance was duplicative of grievance no. 687, in which plaintiff claimed that RN Kelley impersonated PA Spitters. This alleged impersonation is not before the court. Accordingly, PA Spitters' unopposed motion to dismiss (docket no. 34) should be granted.

### III. RN Kelley's motion for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

9

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Eighth Amendment Deliberate Indifference Claim

Plaintiff has alleged that RN Kelley prevented him from obtaining a bottom bunk detail as a special accommodation for his diabetes. It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. The conduct for which Eighth Amendment liability attaches must be more than negligence, "it must demonstrate deliberateness tantamount to an intent to punish." *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (internal citation omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

RN Kelley set forth the following facts in his affidavit. On January 22, 2009, a referral was completed for plaintiff, a new arrival at MTF, to see a medical provider on January 26,

11

2009 for a chronic care visit. Mark Kelley Aff. at ¶ 4 (docket no. 51-2). On January 24, 2009, a health care request was received from plaintiff requesting a bottom bunk. *Id.* In response, the health care department informed plaintiff to discuss the bottom bunk detail at his January 26th appointment. *Id.* at ¶ 5. On January 26, 2009 at 0806 hours, RN Kelley opened an "encounter" in the electronic medical record (EMR), took plaintiff's vital signs and entered them into the EMR prior to plaintiff's appointment with PA Spitters. *Id.* at ¶ 6. At 0816 hours, PA Spitters opened an encounter in plaintiff's EMR and documented his assessment. *Id.* at ¶ 7. PA Spitters' documentation began at 0816 and ended at 0859. *Id.* RN Kelley did not perform a medical examination impersonating PA Spitters nor did he tell plaintiff that only Lansing can authorize bottom bunk details. *Id.* at ¶ 8. The medical records show: that PA Spitters discussed the issue of a bottom bunk with plaintiff; that plaintiff asked why he no longer had the detail; and that PA Spitters showed plaintiff the bottom bunk detail, which expired on October 31, 2008. *Id.* at ¶ 9.

Copies of the January 26, 2009 EMR reflect that PA Spitters examined plaintiff commencing at 8:18 a.m. MCF Chronic Care Clinic Records (docket no. 12-1 at pp. 44-49). The records reflect that plaintiff asked why he no longer had a bottom bunk detail. *Id.* at p. 45. The record contains the following notation:

> Rev'd w pt each med he is on purpose dose etc zocor is a bit confusing he has two different orders. states he was instr to take 40 mg BID Pt is asking why kitchen is not honoring snack bag SAN he has and he states he had a bottom bunk detail ? SAN and wants to know why he no longer has it. On looking at his SAN the bottom bunk expired 10.31/08 and when I showed pt this he states he knows but because he has diabetes and might "fall out" he is entitled to a bottom bunk. I expl statewide criteria for bottom bunks exists and if diabetes is his concern he should work to prevent high and low blood sugars. He states he has access to honey pkts an d didn't at the Oaks. I made a copy of pt SAN and disc w dietitian this date and arrangements will be made for HS snack

*Id.*

Plaintiff has not filed an affidavit or other evidence to rebut the statements made by RN Kelley or to demonstrate that PA Spitters' notes in the EMR were not authentic. There is no evidence that RN Kelley prevented plaintiff from obtaining a SAN for a bottom bunk. Accordingly, RN Kelley's motion for summary judgment should be granted as to the Eighth Amendment claim.

### C. First Amendment Retaliation Claim

To prove a First Amendment retaliation claim, a plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*, 250 F. 3d at 1037, *citing Mount Health City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (internal quotation marks omitted).

Plaintiff alleged that he was issued a misconduct on February 20, 2009 in retaliation for a grievance he wrote against RN Kelley on February 19, 2009. Compl. at ¶ 10 (docket no. 1 at pp. 6-7). The grievance allegedly referred to an incident which occurred on January 26, 2009. *Id.* In his affidavit, RN Kelley stated that "[i]nmate grievances and complaints are a daily occurrence,

13

and I have no knowledge or recollection of any grievance or complaint Plaintiff may have filed." Kelley Aff. at ¶ 11. In his brief, RN Kelley points out that plaintiff has never produced a copy of the grievance. Kelley Brief at p. 2. The only document that plaintiff has provided to this court is a copy of a grievance form dated February 19, 2009, stating that on January 26, 2009, RN Kelley fraudulently identified himself as a PA. *See* Grievance Form (docket no. 27-1 at p. 6). The form, however, is unnumbered and bears no date stamp or other marking to indicate that plaintiff actually filed it or that it was received by the MDOC. *Id.* Plaintiff attached the same unfiled grievance form as an exhibit to his response brief. *See* Grievance Form (docket no. 55-1 at p. 4). In short, there is no evidence that the grievance was received by anyone at the MDOC, or that RN Kelley had any personal knowledge of this grievance prior to issuing the misconduct on February 20th.

There is no evidence that plaintiff engaged in protected conduct by filing a grievance against RN Kelley on February 19, 2009. *See Smith*, 250 F.3d at 1037. Plaintiff cannot demonstrate a necessary element of his retaliation claim. *Id.* Accordingly, RN Kelley's motion for summary judgment should be granted as to plaintiff's retaliation claim.

**IV. Recommendation**

For the reasons set forth above, I respectfully recommend that PA Spitters' motion to dismiss (docket no. 34), and RN Kelley's motion for summary judgment (docket no. 50), be **GRANTED**, and that this action be **DISMISSED**.


Dated: February 8, 2013  /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).